UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MERIDETH PIOTROWSKI, on behalf of her minor
child, J.P.,

                                Plaintiff,

                - against -

ROCKY POINT UNION FREE SCHOOL DISTRICT,
*et al.*,

                            Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-6262 (RRM) (SIL)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

On November 2, 2018, plaintiff Merideth Piotrowski brought this action on behalf of her minor child, J.P., asserting claims under 42 U.S.C. § 1983 ("§ 1983"); Section 504 of the Rehabilitation Act of 1973 ("Section 504"); the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and various provisions of New York state law.  Piotrowski seeks compensatory and punitive damages in connection with defendants' treatment of her son, who receives accommodations in association with his type 1 diabetes.  Presently before the Court are defendants' motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons set forth below, the motions are granted in part and denied in part.

## BACKGROUND

The following facts are taken from the second amended complaint, unless otherwise noted, and the Court assumes the allegations in the complaint to be true for the purpose of the motions.

I.      **Factual Background**

Plaintiff resides in the Suffolk County hamlet of Rocky Point, New York, where her

minor child, J.P., has been enrolled as a student in the Rocky Point Union Free School District

("the District") since September 2008.  (Second Amended Complaint ("SAC") (Doc. No. 30.) at

¶¶ 3–4.)

In March 2013, J.P. was diagnosed with type 1 diabetes and given accommodations under

Section 504, referred to as a "504 Plan."  (*Id.* ¶ 27.)  J.P.'s diabetes became unmanageable in

2015 resulting in extreme hyperglycemia.  (*Id.* ¶ 29.)  J.P.'s 504 Plan was merged into an

Individualized Education Plan ("IEP") when J.P. was diagnosed with Attention Deficit

Hyperactive Disorder ("ADHD").  (*Id.* ¶ 28.)  J.P.'s symptoms worsened in 2015 causing him to

become extremely sick and suffer from stomach pains, bad headaches, extreme thirst, unusually

high urine production, tiredness, shortness of energy, itchy skin, and extreme irritability.  (*Id.* ¶¶

29–30.)  These symptoms caused J.P. to have extreme difficulty waking up and getting his day

started.  (*Id.* ¶ 31.)  J.P. began missing school and became irritable because of his diabetes and

extreme hyperglycemia.  (*Id.* ¶¶ 31–33.)  Because of his diabetes diagnosis, J.P. is classified as a

student with disabilities under Section 504 and under Section 12132 of the ADA.  (*Id.* ¶¶ 23–24.)

The complaint details multiple incidents in which Piotrowski claims that J.P. was

discriminated against on the basis of his disability.  In May 2016, Ms. Meyers, one of J. P.'s

teachers at Rocky Point Middle School ("RPMS") and not a defendant in this action, stated:

"what is the probability that [J.P.] did his homework? Zero percent?"  (*Id.* ¶ 34.)  In June 2016,

James Moeller, the Assistant Principal at RPMS, told J.P. that he was "a very influential kid, that

other kids followed in his footsteps, and that he was going to make an example of him."  (*Id.* ¶

35.)  Piotrowski met with Deborah DeLuca, the Assistant Superintendent of the District, to discuss the comments.  (*Id.* ¶ 36.)

In June 2017, Piotrowski received notice from the District's Committee on Special Education ("CSE") that it would be meeting to discuss J.P.'s absences from school and tardiness. (*Id.* ¶ 38.)  The CSE met that month and determined that none of J.P.'s absences from school or tardiness was attributable to his diabetes.  (*Id.* ¶¶ 39–40.)  Piotrowski contends that the CSE did not consider J.P.'s medical history when it reached that conclusion.  (*Id.* ¶ 41.)

On June 26, 2017, Moeller, acting on behalf of the District filed a Persons in Need of Supervision ("PINS") Petition in Suffolk County Family Court based on J.P.'s absences and tardiness.  (*Id.* ¶¶ 42–43.)  J.P. was arraigned on the PINS petition and admitted to the absences listed in the PINS petition.  (*Id.* ¶¶ 39–40.)  On August 2, 2017, the Family Court issued an Order placing J.P. on probation for one year, requiring J.P. to participate in psychotherapy, cooperate with home base services, be home by 3:00 p.m. on school nights and 7:00 p.m. on non-school nights, and submit to drug testing.  (*Id.* ¶¶ 47–48.)  J.P.'s curfew was later amended to extend it on school nights to 5:00 p.m.  (*Id.* ¶ 49.)

Beginning in September 2017, J.P. enrolled at the Rocky Point High School ("RPHS"). (*Id.* ¶ 26.)  On November 24, 2017, the Suffolk County Department of Probation submitted a petition to the Family Court alleging that J.P. violated the terms of his probation.  (*Id.* ¶ 50.)  The complaint does not specify who filed the petition.  The petition stated that J.P. arrived late to the Probation office and continued to bring his cell phone to school in violation of school rules and subsequent to receiving a warning from a school official and a directive from Probation to leave his cell phone at home for two weeks.  (*Id.* ¶¶ 50–52.)

On December 11, 2017, the Family Court issued an amended order which changed J.P.'s curfew, ordered J.P. not to bring his cell phone to school, and required J.P. to take a class on type 1 diabetes management.  (*Id.* ¶¶ 54–55.)  The requirement that J.P. take a class on diabetes management was later changed to a requirement that he submit a short essay on type 1 diabetes. (*Id.*)

J.P. was given detention in early 2018 "for being in the school nurse's office for the sole purpose of testing his blood sugar."   (*Id.* ¶ 56.)  Michael Gabriel, the Assistant principal of RPMS, issued the detention and identified the infraction for which J.P. purportedly received detention: J.P. was found "roaming the halls with his girlfriend."  (*Id.* ¶ 57.)  However, when asked why J.P.'s girlfriend had not also received detention, Gabriel admitted to Piotrowski that J.P.'s girlfriend had been in class.  (*Id.*)  Gabriel later told J.P. that he was "abusing his 'privilege' in visiting the nurse to test his blood sugar."  (*Id.* ¶ 58.)  According to Piotrowski, punishing J.P. for testing his blood sugar ignored the accommodations outlined in J.P.'s IEP and disregarded his medical needs.  (*Id.* ¶ 59.)

In April 2018, J.P. began using a device called the Dexcom Continuous Glucose Monitor, which allows diabetics to monitor their blood sugar throughout the day using an app downloadable on a cell phone.  (*Id.* ¶ 60.)  One of the added benefits of this system is that Piotrowski is able to track J.P.'s blood sugar using the same app.  (*Id.* ¶ 61.)  J.P.'s IEP was supposed to be updated on May 11, 2018, "to put all staff on notice that J.P. was allowed to utilize his cell phone at all times while on school premises, as it is categorized as a medical device, in order to monitor his blood glucose levels and assist him in effectively managing his Type 1 Diabetes."  (*Id.* ¶ 63.)  However, Piotrowski later learned that J.P.'s IEP had not been properly updated to reflect the new accommodation agreed upon on May 11, 2018.  (*Id.* ¶ 77.)

On October 30, 2018, Gabriel and Susann Crossan, the Principal of RPHS, issued J.P. a one-day, in-school suspension for having his cell phone out during class and for being insubordinate. (*Id.* ¶ 65.) Piotrowski contends that this suspension was inappropriate because J.P.'s cell phone is a medical device. (*Id.* ¶ 66.) After J.P. served his suspension, Mayer called Piotrowski on November 2, 2018, to tell her that the Probation Department was filing a petition in Family Court alleging that J.P. violated the terms of his probation when he was suspended from school. (*Id.* ¶¶ 67–68.) Mayer was aware that J.P. used his phone to monitor his blood sugar and that J.P.'s IEP allowed him to use his phone to monitor his blood sugar while at school. (*Id.* ¶ 68.) On December 5, 2018, the Family Court ordered J.P. to participate in the Sagamore Intensive Day Program for 30 days, for both education programs and psychiatric evaluation. (*Id.* ¶¶ 74–75.)

On December 7, 2018, Kristen White, the Director of Support Services for the District, informed Piotrowski that due to an administrative error, J.P.'s IEP was never properly provided to RPHS and therefore the school did not have "notice that J.P. was allowed to have his cell phone in school at all times during the course of the school day in order to monitor his blood glucose levels." (*Id.* ¶ 77.)

J.P. has not attended school since November 2, 2018. (*Id.* ¶ 72.) He was advised by a physician and psychologist that he should not attend school and should be homeschooled because of his severe stress and high blood pressure. (*Id.* ¶¶ 69–70.) As of November 2018, J.P. was receiving home tutoring provided by the District. (*Id.*)

## II.    Plaintiff's Pleadings

As stated above, on November 2, 2018, Piotrowski commenced this action against the District, the Board of Education of the District ("the Board"), Moeller, Gabriel, Crossan, Suffolk

5

County, the Suffolk County Department of Probation, and Mayer.  (Compl. (Doc. No . 1) ¶¶ 6–14.)  The complaint alleges three federal causes of action.

The first cause of action is for a violation of 42 U.S.C. § 1983 ("§ 1983") against defendants Moeller, Gabriel, Crossan, and Mayer.  (*Id.* ¶¶ 62–72.)  Piotrowski alleges that the defendants violated J.P.'s Fourteenth Amendment right to Equal Protection by failing to abide by J.P.'s 504 Plan and failing to adequately accommodate his disability.  (*Id.* ¶¶ 64–67.)  Piotrowski alleges that filing a PINS petition in the Suffolk County Family Court based on the conclusion that J.P.'s absences from school were not related to his disability was incorrect and violated his rights.  (*Id.* ¶ 68.)

In her second cause of action, Piotrowski contends that all of the defendants violated Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).  (*Id.* ¶¶ 73–84.)  In addition to general allegations that J.P. was discriminated against because of his disability and that this discrimination deprived him of educational benefits, Piotrowski alleges that J.P.'s absences from school were a result of his disability and that he was subjected to discrimination and emotional abuse at school because of his absences.  (*Id.* ¶ 77.)  Piotrowski points to no specific acts that give rise to her second cause of action.

Piotrowski's third cause of action, asserted against all of the defendants, alleges a violation of the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq*.).  (*Id.* ¶¶ 85–97.)  Piotrowski repeats the same general allegations that J.P. was discriminated against because of his disability and does not point to any  specific acts that give rise to her third cause action.  The remaining six causes of action allege state claims.

The complaint seeks compensatory and punitive damages, attorney's fees, "a permanent injunction against Defendants so that [J.P.] may receive the accommodations previously agreed

6

to in his 504 Plan," "a permanent restraining order against Defendants to prevent continued discrimination, harassment and bullying against Plaintiff's minor child," and costs.  (*Id.* ¶¶ 162 A–K.)

On November 7, 2018, five days after filing her complaint, Piotrowski amended the complaint to add additional detail and attach two exhibits that were referenced in her original complaint but not attached.  (First Amended Complaint (Docs. No. 6, 6-1, 6-2).)  The amended complaint did not add any additional claims or defendants and did not materially change the allegations of Piotrowski's federal causes of action.  (*Id.*)

### III.    Procedural History

On November 9, 2018, Piotrowski moved for a preliminary injunction.  (Doc. No. 7.) Piotrowski asked the Court to order defendants to:

> (1) immediately begin to follow and abide by all of Plaintiff's minor child's previously agreed to Type 1 Diabetes accommodations contained in his IEP; (2) provide Plaintiff's minor child with reasonable Type 1 Diabetes accommodations while at school; (3) Defendants, Suffolk County, the Suffolk County Department of Probation, and Jessie Mayer to cease petitioning the Suffolk County Family Court alleging violations of J.P.'s terms of probation; (4) preventing [sic] Defendants from committing any further unlawful, discriminatory and/or harassing practices against Plaintiff's minor child; and for such other, further, and different relief as may be just and proper.

(Memorandum of Law in Support of Motion for Preliminary Injunction (Doc. No. 7-2) at 22– 23.)  However, on December 17, 2018, Piotrowski withdrew her motion for a preliminary injunction and informed the Court that the relief sought was moot.  (Doc. No. 27.)

On January 4, 2019, Piotrowski amended her complaint for a second time.  (*See generally* SAC.)  That pleading is the operative complaint in this action.  Piotrowski added White and Andrea Moscatiello, the District's Director of Special Education, as defendants.  (*Id.* ¶¶ 17–18.) She also named as defendants the five members of the Board: Susan Sullivan, Sean Callahan,

Greg Amendola, Ed Casswell, and Joseph Coniglione.  (*Id.* ¶¶ 12–16.)  Hereafter, the five Board Members, the District, the Board, Moeller, Gabriel, Crossan, Moscatiello, and White, collectively, are referred to as the "School District Defendants."  Defendants Suffolk County, the Suffolk County Department of Probation, and Probation Officer Mayer, collectively, are the "County Defendants."

Building on the original complaint, the second amended complaint adds detail of the actions taken by defendants that Piotrowski alleges give rise to her second cause of action, a violation of Section 504.  The additional detail includes that J.P. was given detention for "abusing the privilege" of going to the nurse to check his blood sugar,  (*id.* ¶ 98),  J.P. was punished for using his cell phone during class despite defendants' knowledge that J.P. used his cell phone to monitor his blood sugar,  (*id.* ¶¶ 99–100), and as a result of these cell-phone related punishments, the County Defendants filed a petition in Suffolk County Family Court alleging violations of J.P.'s probation,  (*id.*).  These allegations are repeated in Piotrowski's amended third cause of action.  (*Id.* ¶¶ 113–15.)

## IV.    The Instant Motion

On January 29, 2019, the School District Defendants moved to dismiss the second amended complaint pursuant to Rule 12(b)(1) and 12(b)(6).  (School District Defendants' Motion to Dismiss ("Sch. Dist. Mot.") (Doc. No. 41).)  The School District's main argument is that the heart of Piotrowski's claims relates to the provision of a free appropriate public education ("FAPE") and therefore, even though Piotrowski did not advance a claim under the Individual with Disabilities Education Act ("IDEA"), her claims are still subject to the IDEA's

exhaustion requirement.  (School Dist. Mot. at 15–24.)[1]  The School District Defendants argue that because the claims are subject to exhaustion and to date have not been exhausted, the Court lacks jurisdiction over the claims.  (*Id.*)  The School District Defendants argue that Piotrowski's federal claims should therefore be dismissed pursuant to Rule 12(b)(1) and this Court should deny supplemental jurisdiction over Piotrowski's remaining state law claims.  (*Id.*)

The School District Defendants also argue that they are entitled to dismissal on Piotrowski ADA and Section 504 claims because Piotrowski has not presented evidence that they acted in bad faith or exercised gross misjudgment.  (School Dist. Mot. at 26.)  They further argue that they are entitled to dismissal because Piotrowski's pleadings do not show that the School District Defendants were deliberately indifferent.  (*Id.*)

The County Defendants also moved to dismiss Piotrowski's claims.  The County Defendants' primary argument is that they are entitled to absolute immunity on all claims because Mayer served a quasi-prosecutorial role and is therefore entitled to the protections afforded to prosecutors.  (County Defendants' Motion to Dismiss ("County Defendants Mot.") (Doc. No. 44) at 14–16.)  In the alternative, the County Defendants argue that they are entitled to qualified immunity because they are government actors and their conduct did not violate a clearly established right.  (County Defendants' Mot. at 16–17.)  They also argue that Piotrowski has failed to state a claim on her federal causes of action, and that all of the state causes of actions are barred because Piotrowski failed to file a notice of claim prior to commencing this action.  (County Defendants Mot. at 24–26.)  The County Defendants also contend that the claims against the Probation Department should be dismissed because the Probation Department

---

[1] The Court refers to the page numbers assigned by the Electronic Case Filing system.

is a non-suable entity.  (County Defendants' Mot. at 28–29.)  The County Defendants also argue that the claims against Suffolk County should be dismissed because Piotrowski has not alleged a constitutional injury caused by an official municipal policy or custom.  (County Defendants' Mot. at 18–19.)  They also argue that Piotrowski's claim for punitive damages against Suffolk County should be dismissed because municipalities are immune from punitive damages.  (*Id.* at 29.)

Piotrowski opposes both motions, arguing, among other things, that the Court has subject matter jurisdiction over her claims because she is not alleging claims that require exhaustion. (Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss ("Opp.") (Doc. No. 45) at 11–13.)  While Piotrowski does not deny that her claims relate to provision of a FAPE, a hallmark of the IDEA, she argues that she validly asserts claims under Section 504, the ADA, and § 1983 based mostly on the discipline J.P. received for the using his phone in school for medical purposes.  (*Id.* at 13–17.)  She further argues that she sufficiently states all her claims in her second amended complaint and that the County Defendants are not entitled to immunity.  (*Id.* at 14–26.)

## STANDARD OF REVIEW

When defendants move to dismiss under both Rule 12(b)(1) and 12(b)(6), "the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action."  *S.E.C. v. Rorech*, 673 F. Supp. 2d 217, 220–21 (S.D.N.Y. 2009).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Where a plaintiff asserts the existence of subject matter jurisdiction, it is her burden to affirmatively

10

establish its existence by a preponderance of the evidence.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) (quoting *Makarova*, 201 F.3d at 113).

Pursuant to Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  The Court assumes the truth of the facts alleged and draws all reasonable inferences in the nonmovant's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    School District Defendants' Motion to Dismiss

#### a.   IDEA Exhaustion

The IDEA was created to "provide disabled students with a free appropriate public education in the least restrictive environment suitable for their needs."  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (internal quotations omitted).  The IDEA mandates that each state establish procedures that give parents an opportunity "to present a complaint with respect to any matter relating to the identification, evaluation, or educational

placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6).

The Second Circuit has explained that New York State has "a two-tier administrative system for review of IEPs.  First, an impartial hearing officer . . . conduct[s] the initial hearing and issue[s] a written decision.  That decision can then be appealed to a state review officer of the New York Education Department."  *Cave*, 514 F.3d at 245 (citing *Heldman ex rel. v. Sobol*, 962 F.2d 148, 152 (2d Cir. 1992)).  "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court."  *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)).  "Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction."  *Id.* (citing *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002)).

The Supreme Court observed in *Fry v. Napoleon Community Schools*, that "[t]he same conduct might violate all three statutes" – *i.e.*, the IDEA, § 504, and the ADA – but IDEA exhaustion is "unnecessary where the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee of a FAPE."  137 S.Ct. 743, 746, 756 (2017).

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE

> requirement is all that explains why only a child in the school
> setting (not an adult in that setting or a child in some other) has a
> viable claim.

*Id.* at 756.

Judge Block analyzed in *Lawton v. Success Acad. Charter Sch., Inc.*, whether claims by five students with disabilities or perceived disabilities asserting violations of Section 504, § 1983, and various state laws, required IDEA exhaustion.  323 F. Supp. 3d 353 (E.D.N.Y. 2018). The plaintiffs in *Lawton* alleged that the students faced discriminatory discipline action when they were barred from the classroom for failure to comply with the school disciplinary code.  *Id.* at 359.

> [P]laintiffs are only required to exhaust the IDEA's administrative
> remedies when the "gravamen" of their claims is denial of a FAPE.
> *Fry*, 137 S.Ct. at 755. If a plaintiff brings an ADA or § 504 claim
> that alleges a standalone cause of action "independent of any
> FAPE denial," exhaustion is not required because "the only 'relief'
> the IDEA makes 'available' is relief for the denial of a FAPE." *Id.*
> at 754-55. This is not a "magic words" test, and plaintiffs may not
> circumvent the IDEA's exhaustion requirement through "artful
> pleading." *Id.* Instead, the "examination should consider substance,
> not surface." *Id.*

*Lawton*, 323 F. Supp. 3d at 361–62.  Since *Lawton*, other courts have analyzed whether IDEA exhaustion is required where allegations involve claims of discriminatory school discipline against students with disabilities.  *See, e.g.*, *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 228 (E.D.N.Y. 2018) (holding that plaintiffs' claims relating to an allegedly discriminatory suspension process and retaliatory calls to EMS are "beyond the reach of the IDEA's exhaustion requirement" (citing *J.S., III, ex rel. J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 986 (11th Cir. 2017) (also holding that claims related to a disabled student's repeated

13

removal from class should not be analyzed as a FAPE violation but rather were "cognizable as a separate claim for intentional discrimination"))).

Here, viewed in the light most favorable to Piotrowski, the claims that Piotrowski advances are beyond the reach of the IDEA's exhaustion requirement.  Like those in *Lawton* and *Patrick*, the allegations here touch on the denial of a FAPE.  (*See, e.g.*, SAC ¶ 104 ("As a result of the discrimination, Plaintiff's minor child was deprived of education benefits, specifically, a supportive, scholastic environment free from discrimination and harassment.").)  Nevertheless, the gravamen of the complaint concerns J.P.'s discriminatory discipline and suspension from school, which extends well beyond denial of a FAPE.  Application of the *Fry* test yields the same result: (1) J.P. might have a cause of action against a library which prohibited cell phones even when medically necessary, and (2) an adult would have a claim against a school where they worked that administered disciplinary procedures in a discriminatory way.  *See Fry*, 137 S.Ct. at 756; *see also Patrick*, 354 F. Supp. 3d at 228 (finding same).

Like *Patrick*, this case differs from *Lawton* in that there is no "smoking-gun" evidence of discrimination.  *Lawton* involved students with disabilities who alleged that their principal kept a "Got to Go" list of students who he wanted removed from the school.  *Lawton*, 323 F. Supp. 3d at 361.  However, the absence of smoking-gun evidence does not impact whether the gravamen of the complaint concerns the denial of a FAPE, which it does not.  The Court finds that Piotrowski's claims are not subject to IDEA exhaustion.

The School District Defendants also challenge the adequacy of the pleadings and ask the Court to dismiss the claims for failure to state a claim.  FED. R. CIV. P. 12(b)(6).

### b.  ADA and Section 504 Claims

14

"Section 504 of the Rehabilitation Act and Title II of the ADA offer essentially the same protections for people with disabilities." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001). "Plaintiffs' complaint is sufficient to withstand dismissal if it alleges that (1) [the student] has a disability for purposes of Section 504/ADA, (2) she is otherwise qualified for the benefit that has been denied, and (3) she has been denied the benefit by reason of her disability." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146–47 (2d Cir. 2002) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (disability analysis under Section 504)). "Such a claim, however, requires proof of bad faith or gross misjudgment." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir. 2014). Monetary damages are only recoverable upon a showing of an intentional violation, the standard for which is "deliberate indifference to the strong likelihood [of] a violation." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (internal citations and quotations omitted).

The Court does not agree that the School District Defendants are entitled to dismissal of Piotrowski's ADA and Section 504 claims based on her failure to plead bad faith or gross misjudgment. Drawing all reasonable inferences in favor of Piotrowski, she has sufficiently plead that defendants acted in bad faith or exercised gross misjudgment. The SAC alleges that J.P. was repeatedly punished for using his cell phone in class to check glucose levels and going to the nurse's office to do the same, both of which he was permitted to do to manage his diabetes. The SAC also alleges that Gabriel changed his reason for disciplining J.P. from "roaming the halls with his girlfriend" to "abusing his 'privilege' in visiting the nurse to test his blood sugar." (SAC ¶¶ 56–58.) Additionally, the School District Defendants were aware of J.P.'s disability and the accommodations he received to manage his disability. These allegations, if true, are sufficient to show that the School District Defendants exercised bad faith or gross

15

misjudgment by repeatedly punishing J.P. for the permissive and necessary management of his diabetes.

The School District Defendants also argue that Piotrowski cannot sustain her ADA and Section 504 claims against individual defendants because those claims do not allow individual capacity suits.  (School District Mot. at 29.)  The Court agrees.  Insofar as Piotrowski is suing individual defendants in their individual capacities, neither Title II of the ADA nor Section 504 provides for individual capacity suits.  *See Garcia*, 280 F.3d at 107; *Patrick*, 354 F. Supp. 3d at 208 n.21.  As such, the ADA and Section 504 claims against all individual defendants, including Mayer who is not a School District Defendant, are dismissed.

### c.  § 1983 Claims

The School District Defendants argue that the Piotrowski's § 1983 claim must be dismissed against defendants Moeller, Gabriel and Crossan because the complaint fails to allege their personal involvement.  (School Dist. Mot. at 29.)

Individuals can only be held liable under § 1983 if they were personally involved in the misconduct alleged.  *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [§] 1983.").  The personal involvement of a supervisor can be shown in the following ways:

> [i] actual direct participation in the constitutional violation, [ii] failure to remedy a wrong after being informed through a report or appeal, [iii] creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such policy or custom to continue, [iv] grossly negligent supervision of subordinates who committed a violation, or [v] failure to act on information indicating that unconstitutional acts were occurring.

16

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1985)).

Here, Piotrowski alleges § 1983 claims against defendants Moeller, Gabriel, Crossan, and Mayer.  (SAC ¶¶ 82–92.)  The underlying constitutional violation asserted in the complaint is a violation of J.P.'s Fourteenth Amendment right to equal protection and right to be free from discrimination as guaranteed by the ADA and Section 504.  Piotrowski alleges that Moeller, Gabriel, and Crossan violated J.P.'s rights by engaging in various acts, including failing to accommodate J.P.'s diabetes, determining that his absences from school were not attributable to his diabetes and subsequently filing a PINS petition based on those absences, and punishing J.P. for the management of his diabetes.  (*Id.*)

The complaint alleges that Moeller made discriminatory and harassing comments toward J.P. and that Moeller filed the PINS petition based on J.P.'s absences from school, when in fact J.P.'s absences directly related to his diabetes.  (*Id.* ¶¶ 35–59.)  Based on these allegations and viewed in a light most favorable to Piotrowski, the complaint alleges sufficient personal involvement of Moeller to sustain a § 1983 claim against him.

The complaint alleges that Gabriel issued J.P. a detention for being in the nurse's office to test his blood sugar and told J.P. that he believed that J.P. was abusing the privilege of visiting the nurse to test his blood sugar.  (*Id.* ¶¶ 56–59.)  The complaint further alleges that Gabriel and Crossan issued J.P. a suspension for having his cell phone out during class and for being insubordinate after telling his teacher that he was allowed to use his phone, despite knowing that J.P. was allowed to use his phone to monitor his blood sugar.  (*Id.* ¶¶ 64–66.)  Drawing all reasonable inferences in favor of Piotrowski, Piotrowski has adequately pled Gabriel and

Crossan's personal involvement based on Gabriel's comments to J.P. and Gabriel and Crossan's discriminatory issuance of school discipline.

## II.     County Defendants' Motion to Dismiss

### a.  Immunity

"Prosecutors enjoy absolute immunity from liability under § 1983 in suits seeking damages for acts carried out in their prosecutorial capacities."  *McFadden v. New York*, No. 10-CV-00141 (RRM) (CLP), 2010 WL 628924, at *2 (E.D.N.Y. Feb. 22, 2010) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Prosecutors' absolute immunity extends to non-prosecutors "performing 'functions analogous to those of a prosecutor.'"  *Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) (quoting *Butz v. Economou*, 438 U.S. 478, 515 (1978)).

> [P]robation officers are entitled to absolute immunity from suit in connection with their "preparing and furnishing presentence reports to the court." *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987); *accord Peay v. Ajello*, 470 F.3d 65, 69 (2d Cir. 2006) (concluding that Connecticut probation officers are "entitled to absolute immunity in suits for damages arising out of their preparation and submission of presentence reports"). They are also entitled to absolute immunity in "initiating parole revocation proceedings and in presenting the case for revocation to hearing officers." *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998); *accord Victory v. Pataki*, 814 F.3d 47, 65 (2d Cir. 2016), *as amended* (Feb. 24, 2016). By contrast, in performing investigatory duties, for example, the filing of a violation report or recommending the issuance of an arrest warrant, a parole officer is entitled only to qualified immunity. *See Scotto*, 143 F.3d at 111; *see also Roberts ex rel. Estate of Roberts v. Lapp*, 297 F. App'x 67, 69 (2d Cir. 2008) (summary order) (holding state parole officer entitled to qualified immunity in recommending that parole warrant issue); *Malik v. Mackey*, 268 F. App'x 83, 84 (2d Cir. 2008) (holding state parole officer entitled to qualified immunity in filing parole violation charges).

*Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019).

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). The defense of qualified immunity is usually unavailable to support a grant of a Rule 12(b)(6) motion unless "the facts supporting the defense appeared on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2005). "The plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

Here, the allegations in the SAC as to Mayer's role in investigating and prosecuting J.P. for the violation of probation are limited. The SAC states that Mayer filed the petition in Suffolk County Family Court alleging that J.P. violated the terms of his probation by getting suspended from school for having his cell phone out, that Mayer called Piotrowski to tell her the same, and that Mayer was aware that J.P.'s cell phone was a medical device through which he monitored and managed his diabetes. (SAC ¶¶ 68, 73.) However in her opposition to the motions to dismiss, Piotrowski argues that Mayer acted "entirely on information provided to her by the School District," (Opp. at 21), which suggested that Mayer's role was closer to that of a prosecutor rather than an investigator. Without more facts, the Court cannot at this time make a determination that Mayer is entitled to absolute immunity based on her role in J.P.'s violation of the terms of his probation.

Mayer is also not entitled to qualified immunity at this stage. The facts here, if proven, could demonstrate that Mayer's conduct, by discriminating against a student with disabilities, violated a clearly established right. "[T]he right not to be subjected to disability discrimination

19

has long been clearly established[.]" *Lawton*, 323 F. Supp. 3d at 368 (quoting *Coleman v. Town of Old Saybrook*, No. 03-CV-1275 (RNC), 2004 WL 936174, at *4 (D. Conn. Apr. 28, 2004)).  A reasonable Probation Officer could not believe that such conduct, as alleged, did not violate the right not to be subjected to disability discrimination, and therefore Mayer is not entitled to the defense of qualified immunity at this stage.

### b.  Department of Probation is not a Suable Entity

The Probation Department is an administrative arm of the County.  Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, whether an entity has the capacity to sue or be sued is a question of state law.  Fed. R. Civ. P. 17(b); *see Yonkers Comm'n on Human Rights v. City of Yonkers*, 654 F. Supp. 544, 551 (S.D.N.Y. 1987).  "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012).

Piotrowski cannot maintain an action against the Suffolk County Department of Probation because it is an administrative arm of the municipality.  Accordingly, Piotrowski's claims against the Suffolk County Department of Probation are dismissed with prejudice.

### c.  Municipal Liability Under Section 1983

It is well established that a municipality such as Suffolk County cannot be held liable under Section 1983 on a *respondeat superior* theory.  *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690–91 (1978); *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S.

51, 60 (2011)).  Local governments may also "be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91.

A plaintiff can establish the existence of a municipal policy or custom by showing: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees. *See Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted).  A theory of municipal liability based on a failure to train amounting to deliberate indifferences requires that "policymakers made a 'deliberate choice . . . from among various alternatives' not to fully train employees." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  "Such a deliberate choice could be shown where 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.*  "[C]ourts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Simms v. The City of New York*, No. 10-CV-3420 (NGG) (RML), 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011), *aff'd sub nom. Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012) (collecting cases).

It is well settled that a municipality is immune from punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981). The Second Circuit has reversed awards of punitive damages against a City finding that *City of Newport* conclusively decided that punitive damages are unavailable against municipal defendants. *See Ciraolo v. City of New York*, 216 F.3d 236, 238 (2d Cir. 2000). Punitive damages may be awarded against individual defendants. *See Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 414 (D. Conn. 2017) (listing examples where punitive damages were awarded against individual defendants such as a police chief and school officials).

To the extent that Piotroswki brings a *Monell* claim, the complaint does not allege the existence of any policy or custom that caused J.P.'s constitutional injury. Instead, the complaint contains only boilerplate allegations that could be construed as a claim against Suffolk County for *Monell* liability. For example, the complaint alleges that the County failed to "properly train employees, administration and staff as to the methods of adequately and reasonably accommodating individuals with disabilities," (SAC ¶ 182), and refers to defendants' "deliberate indifference to Plaintiff's minor child's Type 1 Diabetes," (SAC ¶ 105). However, the Second Circuit has made clear that to survive a motion to dismiss, the pleadings "must do more than merely state that the municipality's failure to train caused his constitutional injury." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (citing *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012)). Piotrowski's mere conclusory allegations that Suffolk County failed to properly train its employees, without any supporting factual material or allegations of a pattern of similar constitutional violations by municipal employees, is insufficient to state a plausible claim for municipal liability. While the Court need not address the County Defendants' argument that municipal defendants are immune from awards of

22

punitive damages, the Court agrees with the County Defendants that Piotrowski's demand for punitive damages as to Suffolk County must be dismissed.  However, Piotrowski can maintain her demand for punitive damages against the individual defendants.

### d.   ADA and Section 504 Claims

The County Defendants argue that the Piotrowski's ADA claim is procedurally barred because she failed to first file a claim with the U.S. Equal Employment Opportunity Commission ("EEOC").  (County Defendants Mot. at 22.)  In response, Piotrowski correctly argues that her claims are not barred by failure to file a claim with the EEOC because the EEOC procedures are inapplicable here because Piotrowski's claims do not relate to workplace or employment discrimination.  *See* 42 U.S.C. § 12117 (incorporating into the ADA the exhaustion requirement of Title VII, codified at 42 U.S.C. § 2000e–5, "for actions which allege employment discrimination").  However, as discussed above, Piotrowski's cannot maintain ADA and Section 504 claims individually against Mayer.

Next, the County Defendants argue that Piotrowski's ADA and Section 504 claims are deficient because the complaint does not state what program or activity of the County the County Defendants deprived J.P. of because "J.P. was not participating in any program or activity of the Probation Department or the County."  (County Defendants' Mot. at 23.)  They further argue that even if the complaint sufficiently states what program the County Defendants deprived J.P. of, the complaint fails to allege that the County Defendants acted with bad faith or gross misjudgment.  (*Id.*)

As stated above, a "complaint is sufficient to withstand dismissal if it alleges that (1) [the student] has a disability for purposes of Section 504/ADA, (2) she is otherwise qualified for the

benefit that has been denied, and (3) she has been denied the benefit by reason of her disability."

*Weixel*, 287 F.3d at 146–47 (citing *Pfrommer*, 148 F.3d at 82).

Here, Piotrowski alleges that the County Defendants discriminated against J.P. when

Mayer filed a violation of probation based on J.P.'s receipt of a school suspension.  (SAC ¶ 100.)

The basis for the suspension – J.P.'s use of his cell phone in school – was discriminatory because

the school knew that J.P. used his phone to monitor his diabetes.  (*Id.*)  The County Defendants'

subsequent filing of the violation of probation was therefore also discriminatory because the

County Defendants were also aware that J.P. used his cell phone to monitor diabetes.  (*Id.*)

Based on these facts and drawing all reasonable inferences in favor of Piotrowski, the Court

finds that Piotrowski has stated a claim under the ADA and Section 504 for discrimination

against the County.

As to whether the complaint adequately pleads bad faith or gross misjudgment, the

analysis in *supra* Part II.a is applicable to the County Defendants.  Drawing all reasonable

inferences in favor of Piotrowski, the allegations discussed above are sufficient to demonstrate

bad faith or gross misjudgment on behalf of the County Defendants.  As such, the County

Defendants' motion for dismissal on these grounds is denied.

### e.   § 1983 Claims

The SAC alleges a violation of § 1983 against Mayer in her individual capacity on the

basis that she violated J.P.'s Section 504 rights, ADA rights, and Fourteenth Amendment right to

equal protection.  (SAC ¶¶ 82–92.)

A "§ 1983 claim has two essential elements: [i] the defendant acted under color of state

law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is or her]

federal statutory rights, or h[is or her] constitutional rights or privileges."  *Annis v. County of*

*Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  The Second Circuit has held that a Section 1983 claim can be maintained against an individual defendant on the basis of Title II or Section 504 violations.  *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 151 (2d Cir. 2002).

Having found that Section 504 and/or the ADA could have been violated based on Mayer's actions filing the violation of J.P.'s probation, at this stage, the Court will not dismiss Piotrowski's § 1983 claim against Mayer.

### f.  State Law Claims

New York State County Law § 52 states, "[a]ny claim or notice of claim against a county . . . must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law."  N.Y. County Law § 52.  New York General Municipal Law 50–e "requires that a plaintiff file a notice of claim prior to commencement of an action against a municipality, and must serve the notice of claim within 90 days after the claim arises." *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 296 (S.D.N.Y. 2005).  The provisions of New York General Municipal Law 50–i include that, "it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice."  N.Y. Gen. Mun. Law § 50-i.

 "The purpose of the notice of claim requirement is to afford the municipal entity an 'adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation.'"  *Shahzad v. Cty. of Nassau*, No. 13-CV-2268 (SJF) (WDW), 2013 WL 6061650, at *6 (E.D.N.Y. Nov. 14, 2013) (adopting report and recommendation) (quoting *Fincher v. County of Westchester*, 979 F. Supp.

25

2d 989, 1002 (S.D.N.Y. 1997)).  Where a plaintiff fails to comply with a statutory condition

precedent to bringing an action, the defect is fatal and dismissal is mandated.  *See Butterfield v.*

*Bd. of Trustees of Schenectady Cty. Cmty. Coll.*, 131 A.D.2d 963, 964 (3rd Dep't 1987) (finding

failure to comply with New York General Municipal Law 50–e and 50–i was a condition

precedent to the assertion of claim against Schenectady County, per New York County Law §

52, and dismissing the claim); *Vail v. Bd. of Co-op. Educ. Servs., Second Supervisory Dist., Erie-*

*Cattaraugus Ctys.*, 115 A.D.2d 231, 232 (4th Dep't 1985).

   Here, the complaint is silent as to any compliance with this statutory prerequisite.  The

Court sees no need to address the defects in the notice as Piotrowski concedes that the earliest

possible date that the notice was filed is January 7, 2019, three days after the SAC was filed.

Accordingly, Piotrowski's state law claims, excluding her fourth cause of action for disability

discrimination in violation of the New York State Human Rights Law, are barred and dismissed

without prejudice for failure to timely file notice of claim.

   The New York State Court of Appeals' decision in *Margerum v. City of Buffalo* found

that notice of claim need not be provided for a Human Rights Law claim against a municipality

because "[h]uman rights claims are not tort actions under section 50–e [of the General Municipal

Law] and are not personal injury, wrongful death, or damage to personal property claims under

section 50–i."  24 N.Y.3d 721, 730 (2015).  Therefore, the Court will not at this time dismiss

Piotrowski's Human Rights Law claim.[2]

## CONCLUSION

---

[2] There may be other grounds for dismissal of Piotrowski's New York Human Rights Law claim but the Court will not reach them in the first instance.

For the reasons stated in the Opinion, defendants' motions to dismiss are granted in part and denied in part.  Piotrowski's ADA and Section 504 claims seeking monetary damages against the individual defendants are dismissed.  All claims against the Suffolk County Department of Probation are dismissed.  Piotrowski's *Monell* claim against Suffolk County is dismissed.  All of Piotrowski's state law claims, excluding her New York State Human Rights Law claim, are dismissed without prejudice.

Piotrowski's following claims survive: (1) first cause of action under 42 U.S.C. § 1983 against defendants Moeller, Gabriel, Crossan, and Mayer, (2) second cause action under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) against defendants the District, the Board, and Suffolk County, (3) third cause of action under the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq*.) against defendants the District, the Board, and Suffolk County, and (4) fourth cause of action under the New York State Human Rights Law against all defendants excluding Suffolk County Department of Probation.  This action is re-committed to the assigned magistrate judge for all remaining pretrial proceedings, including settlement discussions as appropriate.

SO ORDERED.

Dated: Brooklyn, New York
May 28, 2020

*Roslynn R. Mauskopf*

———————————————————————
ROSLYNN R. MAUSKOPF
Chief United States District Judge