UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JUSTIN PIOTROWSKI,

               Plaintiff,                     **MEMORANDUM AND ORDER**

          v.                            18-CV-6262 (RPK) (SIL)

THE ROCKY POINT UNION FREE
SCHOOL DISTRICT; THE BOARD OF
EDUCATION OF THE ROCKY POINT
UNION FREE SCHOOL DISTRICT; JAMES
MOELLER; MICHAEL GABRIEL; SUSANN
CROSSAN; SUSAN SULLIVAN; SEAN
CALLAHAN; GREG AMENDOLA;
ED CASSWELL; JOSEPH CONIGLIONE;
ANDREA MOSCATIELLO; KRISTEN
WHITE; SUFFOLK COUNTY; and
JESSIE MAYER,

               Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Justin Piotrowski, a former student at Rocky Point High School, brings this action

principally alleging that the school and its administrators failed to appropriately accommodate his

diabetes and that the school unlawfully subjected him to discipline as a result.  Plaintiff brings

claims against the Rocky Point Union Free School District, the Board of Education of the Rocky

Point Union Free School District, and Suffolk County under Section 504 of the Rehabilitation Act

of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.  He

also asserts claims against individual defendants James Moeller, Michael Gabriel, Susann Crossan,

and Probation Officer Jessie Mayer under 42 U.S.C. § 1983, and against all these defendants and

several other School District and Board employees—Susan Sullivan, Sean Callahan, Greg

Amendola, Ed Casswell, Joseph Coniglione, Andrea Moscatiello, and Kristen White—under the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.  Defendants have

moved for summary judgment.  For the reasons stated below, summary judgment is granted to defendants on all of Piotrowski's federal causes of action, and I decline to exercise supplemental jurisdiction over Piotrowski's NYSHRL claim, which is dismissed without prejudice to refiling in state court.  I likewise decline to exercise supplemental jurisdiction over defendants' cross-claims for indemnification and/or contribution.

## FACTUAL BACKGROUND

The following facts are taken from the parties' Rule 56.1 Statements and relevant portions of the record and are undisputed unless otherwise noted.

### I. The District Makes Plans to Accommodate Piotrowski's Diabetes.

Piotrowski suffers from Type 1 diabetes.  Cnty. Defs.' Local Rule 56.1 Statement ¶ 7 (Dkt. #87-1) ("Cnty. Defs.' Statement"); Pl.'s Counterstatement in Opp'n to Cnty. Defs.' Local Rule 56.1 Statement ¶ 7 (Dkt. #85-1) ("Pl.'s Cnty. Statement").  In 2013, Rocky Point School District established a plan to accommodate Piotrowski's Type 1 diabetes under the Rehabilitation Act.  School Defs.' Local Rule 56.1 Statement ¶ 21 (Dkt. #81-1) ("School Defs.' Statement"); Pl.'s Counterstatement in Opp'n to School Defs.' Local Rule 56.1 Statement ¶ 20 (Dkt. #82-1) ("Pl.'s School Statement").[1]

A Committee of Special Education later established an Individualized Education Program ("IEP") for Piotrowski.  School Defs.' Statement ¶ 24; Pl.'s School Statement ¶ 23.  The IEP went into effect on June 10, 2016, when Piotrowski was in middle school.  *See ibid*.  The IEP provided that if Piotrowski was late to class or absent due to a medical reason, he was to be excused.  School Defs.' Statement ¶ 25; Pl.'s School Statement ¶ 24; IEP June 10, 2016, School Defs.' Ex. Q, at 8–

---

[1] The first paragraph in plaintiff's counterstatement in opposition to the School Defendants' Local Rule 56.1 statement is not numbered.  *See* Pl.'s School Statement 2.  As a result, all other paragraphs in plaintiff's counterstatement are misnumbered, such that paragraph *n* in the School Defendants' Rule 56.1 statement corresponds to paragraph *n* – 1 in plaintiff's counterstatement.

9 (ECF Pagination) (Dkt. #81-19) ("2016 IEP").  It also provided that Piotrowski could test his blood glucose "at any time [and] within any place in the school," that he was to have "[a]ccess to . . . [the] nurse at any time," and that the nurse was to "keep [a] log of all visits to the Health Office" and notify Piotrowski's parents if he was "exhibiting medical concerns related to diabetes." 2016 IEP 8–9.

## II.   Piotrowski Is Placed on Probation.

Beginning in November 2015 and continuing through 2017, Piotrowski missed numerous days of school and was often late when he did attend.  *See, e.g.*, School Defs.' Statement ¶¶ 23, 28, 38, 55; Pl.'s School Statement ¶¶ 22, 27, 37, 54.  The parties dispute why Piotrowski was late and absent: Piotrowski says his attendance issues were due to his diabetes; defendants say they were not.  *See, e.g.*, School Defs.' Statement ¶¶ 42, 51, 60; Pl.'s School Statement ¶¶ 45–48, 59.

In June 2017, the Committee of Special Education met to make what the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*, refers to as a "manifestation determination"—a finding as to whether Piotrowski's absences and tardiness were caused by, or had a direct or substantial relationship to, his disability.  20 U.S.C. § 1415(k)(1)(E); *see* School Defs.' Statement ¶¶ 38–41; Pl.'s School Statement ¶¶ 37–40.  The committee determined that Piotrowski's absences and tardiness were not a manifestation of his diabetes.  *See* School Defs.' Statement ¶ 42; Pl.'s School Statement ¶ 41.  According to Piotrowski, that determination was incorrect and contrary to his mother's statements that his absences and tardiness were in fact due to his disabilities.  *See* Pl.'s School Statement ¶¶ 45–48.  Neither Piotrowski nor his mother administratively appealed the manifestation determination, as the IDEA permitted them to do.  *See* 20 U.S.C. § 1415(k)(3)(A); School Defs.' Statement ¶¶ 50, 53; Pl.'s School Statement ¶¶ 49, 52.

Following the manifestation determination, the District filed a petition in New York family court—signed by defendant James Moeller, a Rocky Point Assistant Principal—to have Piotrowski

declared a Person In Need of Supervision ("PINS").  School Defs.' Statement ¶ 54; Pl.'s School

Statement ¶ 53; June 27, 2016 PINS Petition, Pl.'s Ex. 10, at 3 (Dkt. #82-12) ("PINS Petition");

James Moeller Dep. Tr., School Defs.' Ex. I, at 28:6–23 (Dkt. #81-11) ("Moeller Dep.").  The

PINS petition alleged that Piotrowski had been truant during the 2016–17 school year in violation

of Article 65 of New York's Education Law.  *See* School Defs.' Statement ¶ 55; Pl.'s School

Statement ¶ 54.  The petition further noted that Piotrowski was failing all his main academic

classes and alleged that his absences and tardiness were not a manifestation of his diabetes.  School

Defs.' Statement ¶¶ 56–57; Pl.'s School Statement ¶¶ 55–56.

Piotrowski and his mother appeared in family court during the PINS proceeding, where

they were represented by counsel.  There, Piotrowski admitted that he "[d]id not attend school in

accord with the provisions of part one of Art[.] 65 of the Education Law," Order of Adjudication

dated August 2, 2017, School Defs.' Ex. U, at 1–2 (Dkt. #81-23) ("Family Court Order"); *see*

School Defs.' Statement ¶ 60; Pl.'s School Statement ¶ 59, which requires regular attendance at

school unless an absence is authorized by school rules, *see* N.Y. Educ. Law § 3210(1)(a), (2)(b).

Based on that admission, the court adjudicated Piotrowski a Person In Need of Supervision and

placed him on probation, ordering him to participate in psychotherapy, home-based social services,

and regular drug testing.  He was also required to obey a curfew.  School Defs.' Statement ¶ 61;

Pl.'s School Statement ¶ 60; Cnty. Defs.' Statement ¶ 20; Pl.'s Cnty. Statement ¶ 20.

## III.  Officer Mayer Alleges a Probation Violation.

On November 24, 2017, Probation Officer Mayer filed a petition with the family court

alleging that Piotrowski had violated the conditions of his probation.  Specifically, Officer Mayer

alleged that Piotrowski (1) reported to the probation department after 5 p.m., without being

accompanied by a parent (as required if Piotrowski was out after curfew); and (2) violated Officer

Mayer's directive—given after plaintiff had received a warning from the school regarding his cell

phone—to leave his cell phone at home for two weeks.  *See* Cnty. Defs.' Statement ¶¶ 33–37; *see also* November 24, 2017 Violation of Probation Petition, Pl.'s Ex. 12, at 2–3 (Dkt. #82-14) ("2017 VOP").  Piotrowski contends that, in fact, he arrived at the probation office more than half an hour before 5 p.m.  *See* Pl.'s Cnty. Statement ¶ 33.  As a result of this petition, the family court judge prohibited Piotrowski from having his phone at school, imposed a 3 p.m. curfew on school nights, and directed Piotrowski to attend a diabetes education class.  Cnty. Defs.' Statement ¶ 42; Pl.'s Cnty. Statement ¶ 42; Family Court Order dated December 11, 2017, Cnty. Defs.' Ex. F (Dkt. #87-9).

## IV.   Piotrowski Is Given 40 Minutes of Detention.

In February 2018, Michael Gabriel, an assistant principal at Rocky Point, gave Piotrowski an after-school detention that lasted 40 minutes.  School Defs.' Statement ¶ 89; Pl.'s School Statement ¶ 88.  According to Gabriel, he noticed that Piotrowski would not immediately report to the nurse upon arriving at school but would instead spend time with his friends and girlfriend, proceeding to the nurse's office only after his first-period class had begun.  Gabriel told Piotrowski that his tardiness disturbed the class, so he needed to go to the nurse as soon as he arrived at school. After Piotrowski continued to be late to first period, Gabriel issued him a detention on the view that Piotrowski was "abusing his privileges" under the IEP with respect to his use of the nurse's office.  *See* School Defs.' Statement ¶¶ 90, 92; Michael Gabriel Dep. Tr., School Defs.' Ex. L, at 58:2–23, 66:5–68:21, 121:5–122:6, 124:5–10, 128:8–129:12 (Dkt. #81-14) ("Gabriel Dep.").

Piotrowski acknowledges that he had enough time to get his blood sugar tested between the time he arrived at school and the start of first period.  *See* Justin Piotrowski Dep. Tr., School Defs.' Ex. H, at 76:10–13 (Dkt. #81-10) ("J.P. Dep.").  And while he denies in his Rule 56.1 statement that Gabriel disciplined him for being late to his first-period class—asserting that Gabriel actually disciplined him for being late to a class in the middle of the day, *see* Pl.'s School Statement

¶ 90 (citing Gabriel Dep. 122)—the record evidence he cites does not substantiate that account, *see* Gabriel Dep. 122:3–6 (Gabriel's statement that "[w]hen Justin was late to class again, he was given a day of detention to enforce the rule of going to the nurse first and being on time to class."). Piotrowski also contends that Gabriel's issuance of the detention was contrary to his IEP, which allowed him "to use the nurse's office at *any time* throughout the day." Pl.'s School Statement ¶ 90 (emphasis in original).

## V.   The District Amends Piotrowski's IEP to Allow Use of a Cell Phone to Monitor Glucose Levels.

On March 19, 2018, the Committee of Special Education met and generated an IEP for the rest of the 2017–18 school year. School Defs.' Statement ¶¶ 72, 74–75; Pl.'s School Statement ¶¶ 71, 73–74. Piotrowski's mother and his attorney asked that Piotrowski be permitted to use his cell phone at school to monitor his blood sugar levels. According to the committee's chairperson, plaintiff's counsel stated at the committee meeting that plaintiff's phone "could be placed in the 'top right-hand corner of his desk because he would be able to see the screen or . . . whatever he needed to see, because it . . . would make a noise if levels were rising too quickly or falling too quickly.'" School Defs.' Statement ¶78 (quoting Kristen White Dep. Tr., School Defs.' Ex J., at 79:2–7 (Dkt. #81-12)).

The Committee amended Piotrowski's IEP to allow him to have "access to his cell phone for the purpose of monitoring blood sugar levels," while adding that "all school rules and regulations in regards to cell phone use continue to apply." IEP March 19, 2018, School Defs.' Ex. S, at 9–10 (ECF Pagination) (Dkt. #81-21) ("2018 IEP"); *see* School Defs.' Statement ¶¶ 74–76; Pl.'s School Statement ¶¶ 73–75. The revised IEP stated that "[i]f the cell phone is confiscated, Justin will remain in close proximity to the phone within the main office so that he can continue to monitor glucose levels." 2018 IEP 10.

According to Piotrowski, due to an administrative error, the IEP provision permitting him to have access to his cell phone while in school was not reproduced in his 2018–19 IEP.  School Defs.' Statement ¶ 111; Pl.'s School Statement ¶ 110.

Piotrowski did not begin using the blood-sugar monitoring application in March 2018, when the Committee of Special Education authorized its use, although Piotrowski's mother told school officials that he would begin using the cell phone to monitor his blood sugar levels "imminently."  School Defs.' Statement ¶¶ 109–10; Pl.'s School Statement ¶¶ 108–09.

## VI.   Piotrowski Is Suspended and His Probation Term Is Extended.

On May 10, 2018, Piotrowski received an out-of-school suspension for being disrespectful and disruptive on school property by mocking his teacher assistant's accent, putting up his middle finger in class, and walking out of class without permission.  Cnty. Defs.' Statement ¶ 46; Pl.'s Cnty. Statement ¶ 46.  Because of that suspension, the family court found that Piotrowski had violated his probation, extended his term of probation to December 2018, and ordered the Probation Officer to file a violation of probation if Piotrowski received any new in-school or out-of-school suspensions.  Cnty. Defs.' Statement ¶¶ 47–48; Pl.'s Cnty Statement ¶¶ 47–48.

At some point during the 2018–19 school year, Piotrowski began using a phone application for monitoring blood-sugar levels.  School Defs.' Statement ¶ 81; Pl.'s School Statement ¶¶ 83–84. With the blood-sugar application in place, Piotrowski's phone would "vibrat[e] if [Piotrowski's] blood glucose levels were abnormal."  School Defs.' Statement ¶ 105; Pl.'s School Statement ¶ 104; *see* Dexcom User Guide, Pl.'s Ex. 31, at Ch. 10, pp. 133–71 (Dkt #82-33) ("Dexcom Guide") (describing the various kinds of "alarms" and "alerts" that cause the user's phone to vibrate, including an "alarm" when the user's "glucose level is dangerously low," but also several "alerts" when the user's glucose level is outside his "target range" or when the level

is rising or falling rapidly).  Neither Piotrowski nor his mother notified the school when Piotrowski

began using the software.  Pl.'s School Statement ¶¶ 109, 110.

## VII.    Piotrowski Is Suspended Again for One Day.

On October 31, 2018, Principal Crossan and Assistant Principal Gabriel ordered

Piotrowski to serve a one day in-school-suspension arising from an incident in class the previous

day.  School Defs.' Statement ¶ 94–95; Pl.'s School Statement ¶ 93–94.

On October 30, 2018, Piotrowski took out his cell phone during his geometry class.

Piotrowski's teacher directed him to put the phone away, telling him "[i]t's a warning."  School

Defs.' Statement at ¶ 97; Pl.'s School Statement ¶ 96.  In response, Piotrowski "became

argumentative," and told the teacher that she could not give him a warning.  *Ibid.*  He did not,

however, tell her at that time that he was using his phone to check his blood-sugar levels.  School

Defs.' Statement ¶ 113; Pl.'s School Statement ¶ 112.  Plaintiff does not dispute that his teacher

"asked [him] to leave the classroom as [Piotrowski] being argumentative was disrupting the

classroom."  School Defs.' Statement ¶ 98; Pl.'s School Statement ¶ 97; *see* In-School Suspension

Letter dated November 2, 2018, School Defs.' Ex. AA, at 1 (Dkt. #81-29) ("Suspension Letter").

Eventually, Gabriel and another school administrator came to the classroom to escort Piotrowski

away.  School Defs.' Statement ¶ 99; Pl.'s School Statement ¶ 98.

Piotrowski was given a one-day in-school suspension.  School Defs.' Statement ¶ 114; Pl.'s

School Statement ¶ 113.  On November 2, 2018, the School District sent a letter to Piotrowski's

parents stating that he had received this suspension for insubordination.  Suspension Letter 1.  The

letter stated that Piotrowski told his teacher she could not give him a warning, and that he had

"become argumentative with his teacher" and "refused to" leave the class when asked, after which

administrators were called to the classroom to have him removed.  *Ibid.*  Piotrowski states that his

mother informed Assistant Principal Gabriel a short time after he was removed from class on

October 30 that he had been using his cell phone to check his blood sugar, though he acknowledges that he did not contemporaneously tell his teacher that fact.  Pl.'s School Statement ¶ 100.

## VIII.    Officer Mayer Reports a Violation of Probation.

Gabriel notified Officer Mayer about Piotrowski's in-school suspension.  Cnty. Defs.' Statement ¶ 50; Pl.'s Cnty. Statement ¶ 50.  He provided Officer Mayer with a letter indicating that Piotrowski had been suspended for insubordination when he became argumentative and refused to follow directions.  Cnty. Defs.' Statement ¶¶ 53–54; Pl.'s Cnty. Statement ¶¶ 53–54.

Officer Mayer then reported a violation of probation to the family court.  Cnty. Defs.' Statement ¶ 60; Pl.'s Cnty. Statement ¶ 60.  She submitted a statement explaining that Piotrowski had violated his probation because he had received a one-day in-school suspension for insubordination and because Piotrowski had continued to be truant.  *See* 2018 Violation of Order of Probation Petition, Pl.'s Ex. 17, at 1–3 (Dkt. #82-19) ("2018 VOP").

According to Piotrowski, before Officer Mayer filed the violation, Piotrowski's mother told Officer Mayor that Piotrowski's IEP permitted him to use his cell phone to manage his diabetes, and that Piotrowski had been using his cell phone on the date in question for medical purposes.  *See* Pl.'s Cnty. Statement ¶¶ 60–61, 77, 80, 82, 84, 94–95.

On December 5, 2018, the family court judge ordered Piotrowski to be evaluated at Sagamore Children's Psychiatric Center.  The evaluator recommended an intensive day-treatment program that would last thirty days.  The judge then ordered Piotrowski to attend that program. Cnty. Defs.' Statement ¶ 68; Pl.'s Cnty. Statement ¶ 68; Pl.'s School Statement ¶ 115.

## IX.    Piotrowski Graduates.

Sometime later, Piotrowski and his mother voluntarily enrolled Piotrowski at Sequoya High School, where he remained for a year.  Pl.'s School Statement ¶ 122; School Defs.' Statement

¶ 122.  Piotrowski then returned to Rocky Point High School, from which he graduated.  School Defs.' Statement ¶¶ 123–26; Pl.'s School Statement ¶¶ 123–26.

## PROCEDURAL HISTORY

The operative pleading in this case is plaintiff's second amended complaint ("SAC").  *See* SAC (Dkt. #30).

Defendants moved to dismiss the SAC in full.  Judge Mauskopf, the then-assigned district judge, granted the motion in part and denied it in part.  She allowed the following claims to proceed: (1) a claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, against the District, the Board, and Suffolk County; (2) a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, against the District, the Board, and Suffolk County; (3) claims under 42 U.S.C. § 1983 against Moeller, Gabriel, Crossan, and Mayer; and (4) a claim under the New York State Human Rights Law ("NYSHRL") against all defendants.  *See* Memorandum and Order dated May 28, 2020, at 27 (Dkt. #50) ("Prior Order").

Along with their answer to the SAC, the County and Officer Mayer (collectively, the "County Defendants") filed a cross-complaint against the District, the Board, and all the named individual school-employee defendants (collectively, the "School Defendants") for indemnification and/or contribution.  *See* Cnty. Defs.' Answer to SAC & Crossclaims ¶ 169 (Dkt. #53) ("Cnty. Defs.' Answer").  The School Defendants did the same.  *See* School Defs.' Answer to SAC & Crossclaims ¶ 171 (Dkt. #55) ("School Defs.' Answer").

After discovery, both sets of defendants moved for summary judgment as to all of plaintiff's remaining claims.  *See* School Defs.' Mot. for Summary Judgment (Dkt. #81) ("School Defs.' Mot."); Cnty. Defs.' Mot. for Summary Judgment (Dkt. #87) ("Cnty. Defs.' Mot.").  The County Defendants also sought summary judgment on the School Defendants' cross-claims, *see* Cnty. Defs.' Mot. 24–25, but the School Defendants did not similarly move.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "A fact is material if it might affect the outcome of the suit under governing law."  *Ibid*.  The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim."  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co*., 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).

In assessing the record, courts consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers[.]"  Fed. R. Civ. P. 56(c)(1)(A).  Courts view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citation, quotation marks, and alterations omitted).

"A court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements."  *24/7 Recs., Inc. v. Sony Music Ent., Inc*., 429 F.3d 39, 46 (2d Cir. 2005) (quoting

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)) (quotation marks omitted). But "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz*, 258 F.3d at 74) (quotation marks omitted).

## DISCUSSION

For the reasons below, summary judgment is granted to defendants on Piotrowski's federal claims. Piotrowski's state claims are dismissed without prejudice to refiling in state court.

### I.   ADA and Rehabilitation Act Claims

Piotrowski seeks money damages under the ADA and Section 504 of the Rehabilitation Act. He alleges that the District, Board, and County violated those statutes through three instances of discrimination. *See* Pl.'s Consolidated Opp'n to Defs.' Mots. For Summ. J. 19 (Dkt. ##82, 85) ("Pl.'s Opp'n"). First, he contends, those defendants violated the ADA and Rehabilitation Act by causing him to be put on probation after his diabetic conditions made him repeatedly late to, and absent from, class. *Ibid.* Second, those defendants allegedly violated those statutes because Piotrowski received a forty-minute detention based on his use of the nurse's office. *Ibid.* Third, the District, Board, and County allegedly violated those statutes because Piotrowski received a one-day in-school suspension in connection with an incident in which he was using his cell phone to monitor his glucose levels in class. *Ibid.* For the reasons explained below, the District, Board, and County are entitled to summary judgment on these claims.

### A.  Legal Background

To establish a *prima facie* case of discrimination under either the ADA or Section 504 of the Rehabilitation Act, a plaintiff must show that "(1) plaintiff is a qualified individual with a

disability; (2) plaintiff was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (3) such exclusion or discrimination was due to plaintiff's disability." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (citation, quotation marks, and alterations omitted).  As to the second element, as relevant to Piotrowski's claims, "[e]xclusion or discrimination may take the form of disparate treatment, . . . or failure to make a reasonable accommodation." *Ibid.* (citation omitted).

*Disparate treatment.*  Under both the ADA and Rehabilitation Act, claims of disparate treatment—that is, intentional discrimination—are analyzed under the burden-shifting framework originally established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 48–49 (2d Cir. 2002), *superseded by statute on other grounds as stated in Jackson v. N.Y.C. Dep't of Educ.*, 768 F. App'x 16, 17 (2d Cir. 2019); *Gentleman v. State Univ. of N.Y. Stony Brook*, No. 21-1102-CV, 2022 WL 1447381, at *3 (2d Cir. May 9, 2022).  Under that framework, "[a] plaintiff must establish a *prima facie* case; the [defendant] must then offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride v. BIC Consumer Prod. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (ADA discrimination) (citation omitted).

*Failure to accommodate.*  A plaintiff may also bring a claim for failure to accommodate under both the ADA and Rehabilitation Act.  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186–87 (2d Cir. 2015) (citation and quotation marks omitted).  In reviewing a failure-to-accommodate claim, a court "ask[s] whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled'" due to a failure to offer reasonable accommodations for a disability.  *Hamilton*

*v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Wright v. N.Y.S. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)); *see Dean,* 804 F.3d at 187.

Moreover, because the ADA and Rehabilitation Act "address discrimination against disabled students, rather than incorrect or erroneous special education treatments," *Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-799 (JFB) (WP), 2007 WL 1456221, at *15 (E.D.N.Y. May 16, 2007), a plaintiff challenging a school district's response to his disability can succeed only by "demonstrate[ing] that a school district acted with bad faith or gross misjudgment," *French v. N.Y.S. Dep't of Educ.*, 476 F. App'x 468, 472–73 (2d Cir. 2011) (citation  and quotation marks omitted); *see Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997) ("That a court may . . . come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under [the IDEA], is not necessarily the same thing as a holding that a [disabled] child has been discriminated against solely by reason of his or her [disability].") (citation omitted; brackets and ellipses in original), *aff'd*, 181 F.3d 84 (2d Cir. 1999), *and aff'd*, 208 F.3d 204 (2d Cir. 2000).  "Courts have equated gross misjudgment with deliberate or reckless indifference." *J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.,* 324 F. Supp. 3d 455, 468 (S.D.N.Y. 2018) (collecting cases).

*Money damages.*  Deliberate indifference or intentional wrongdoing is similarly required in any lawsuit—like this one—in which the remedy the plaintiff seeks under the ADA and Rehabilitation Act is money damages.  Specifically, the Second Circuit has stated that a plaintiff may recover money damages under the ADA and Rehabilitation Act "only upon a showing of an *intentional* violation."  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (emphasis in original) (citing *Bartlett v. N.Y.S. Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *abrogated on other grounds by Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999), *and judgment vacated*, 527 U.S. 1031 (1999)).  An intentional violation "may be inferred when a

policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy." *Loeffler,* 582 F.3d at 275 (citation, quotation marks, and alterations omitted); *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 657 (S.D.N.Y. 2017) ("To recover compensatory damages under the ADA or the Rehabilitation Act, a plaintiff must prove that the defendant exhibited 'deliberate indifference' as to the 'strong likelihood' that its actions were unlawful under the statutes.") (quoting *Loeffler*, 582 F.3d at 275).

**B.  The IDEA's Exhaustion Requirement Does Not Bar Plaintiff's Claims**

Defendants first argue that they are entitled to summary judgment on all of plaintiff's ADA and Rehabilitation Act claims because he failed to comply with the IDEA's exhaustion requirement.  *See* School Defs.' Mot. 6–14.  That argument fails.

The IDEA's exhaustion requirement does not apply to any of plaintiff's ADA or Rehabilitation Act claims.  The IDEA "compels exhaustion when a plaintiff seeks 'relief' that is 'available' under the IDEA." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 166 (2017) (quoting 20 U.S.C. § 1415(*l*)).  "[R]elief is 'available' . . . when it is accessible or may be obtained." *Ibid.* (citations and quotation marks omitted).  The Supreme Court recently clarified the application of this provision to damages claims, by holding—contrary to suggestions in earlier Second Circuit case law—that because money damages are not available under the IDEA, claims for money damages alone are not subject to IDEA exhaustion.  *Luna Perez v. Sturgis Pub. Schs.*, 143 S. Ct. 859, 864 (2023).  Accordingly, because plaintiff seeks only money damages, *see* SAC ¶¶ B–C, the exhaustion requirement in Section 1415(*l*) does not apply.  *See ibid.*

Accordingly, plaintiff was not required to exhaust his administrative remedies before filing suit under the ADA and Rehabilitation Act.

**C. Defendants Are Nevertheless Entitled to Summary Judgment on Plaintiff's ADA and Rehabilitation Act Claims**

Plaintiff asserts that various actions taken against him violated his rights under the ADA and Rehabilitation Act. Broadly speaking, plaintiff's claims fall into three buckets: (1) claims arising from the truancy determination entered against plaintiff; (2) claims arising from plaintiff's forty-minute after-school detention; and (3) claims arising from plaintiff's one-day in-school suspension. Defendants are entitled to summary judgment on each of these claims.

*1. Truancy Determination*

The School District, Board, and County are entitled to summary judgment on Piotrowski's claim that they discriminated against him because they "refused to forgive absences and episodes of lateness resulting from [p]laintiff's diabetic condition and in fact punished him for alleged truancy." Pl.'s Opp'n 19; *see* SAC ¶¶ 97, 112. These claims relate to the school district's June 6, 2017 finding that plaintiff's "absences and tardiness were not related to his Type 1 Diabetes." School Defs.' Statement ¶ 42; Pl.'s School Statement ¶ 41. Under the IDEA, the school was required to make such a finding, known as a "manifestation determination," before disciplining plaintiff for his attendance record. *See* 20 U.S.C. § 1415(k)(1)(E)(i)(I) (requiring a school seeking to "change the placement of a child with a disability because of a violation of a code of student conduct" to determine whether "the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability"). After making that determination, the District filed a petition with the New York family court to have Piotrowski declared a Person In Need of Supervision based on his truancy. School Defs.' Statement ¶ 54; Pl.'s School Statement ¶ 53. And in that PINS proceeding, the family court adjudged plaintiff truant on the basis that plaintiff "voluntarily, intelligently and knowingly admitted in open court" that he "[d]id not attend school in accord with the provisions of part one of Art[.] 65 of the Education Law"—*i.e.* that his

unexcused absences were *not* related to his disability.  Family Court Order 1–2; School Defs.'
Statement ¶¶ 60–61; Pl.'s School Statement ¶¶ 59–60.

Even without considering plaintiff's admission to truancy in the PINS proceeding, on the
facts here, no reasonable jury could conclude that any of the defendants acted with the deliberate
indifference required for plaintiff to prove "an *intentional* violation" of the ADA or Rehabilitation
Act in making the manifestation determination or instituting the PINS proceeding.  *Loeffler*, 582
F.3d at 275.  Plaintiff takes issue with the Committee of Special Education's rejection of his
mother's submission at the June 6, 2017 meeting that "[p]laintiff had been absent from and late to
school for reasons directly connected to [p]laintiff's diabetic condition."  Pl.'s School Statement
¶ 45; *see* Pl.'s Opp'n 19; Merideth Piotrowski Dep. Tr., School Defs.' Ex. G, at 72:2–5 (Dkt. #81-
9) ("M.P. Dep.") ("Q: You were never prevented from talking at this meeting?  A: No.  They let
me talk but they dismissed what I said.").  But plaintiff has submitted no evidence permitting a
factfinder to make the sizable leap from the fact that the Committee disagreed with plaintiff's
mother to the conclusion that doing so reflected "at least deliberate indifference to the strong
likelihood that" doing so violated plaintiff's "federally protected rights."  *Loeffler,* 582 F.3d at
275.  Plaintiff's mother did not submit any medical evidence to the Committee.  *See* School Defs.'
Statement ¶¶ 47–49; Pl.'s School Statement ¶¶ 46–48.  And while plaintiff argues that "pursuant
to the Rocky Point UFSD Attendance Regulations, a statement from a parent or guardian informing
the school that a student is late or absent due to 'sickness of a child' is considered a 'legal excuse'"
for an absence, Pl.'s School Statement ¶¶ 46–48, what the regulations actually say is that students
who are absent "are required on their return to school to bring written excuses from parents or
guardians in every case of absence or tardiness," Rocky Point UFSD District Information Sheet,
Pl.'s Ex. 29, at 2–3 (Dkt. #82-31); *see* Rocky Point High School Student Handbook, Pl.'s Ex. 30,
at 7 (Dkt. #82-32) ("Rocky Point Handbook") (requiring a parent to notify the school "within 24

hours of the absence <u>AND</u> to provide a written excuse upon the student's return to school")
(emphasis in original).  There is no evidence in the record suggesting that plaintiff submitted the
required written excuses for any of the "26 full days" during which plaintiff was truant in eighth
grade, *see* School Defs.' Statement ¶ 55; Pl.'s School Statement ¶ 54, and nothing in the record to
indicate that, when making its manifestation determination, the Committee of Special Education
was required to accept plaintiff's mother's after-the-fact representations as to the legality of his
absences—much less that by failing to do so the defendants *intentionally* violated the ADA or the
Rehabilitation Act.[2]  Defendants are accordingly entitled to summary judgment on these claims.

### 2. Forty-Minute After-School Detention

The School District, Board, and County are entitled to summary judgment on Piotrowski's
claim that they violated the ADA and Rehabilitation Act based on a forty-minute detention
Piotrowski received for being late to class—on Piotrowski's account, because he was visiting the
nurse.  *See* Pl.'s Opp'n 19; Pl.'s School Statement ¶¶ 86, 88–92.

Piotrowski has not established a *prima facie* case that he was subjected to disparate
treatment on the basis of his disability, because he has not offered evidence that any other student
was repeatedly late to class without being subject to discipline.  *See, e.g., Froio v. Monroe-
Woodbury Cent. Sch. Dist.*, No. 17-CV-604 (CS), 2020 WL 2731970, at *8 (S.D.N.Y. May 26,

---

[2]  In addition, as a result of the determination that Piotrowski was truant in the PINS proceeding, Piotrowski is likely
barred by collateral estoppel from contending that his absences were the result of his diabetes.  "Collateral estoppel,
or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that
was fully and fairly litigated in a prior proceeding."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir.
2002) (citations omitted).  The doctrine "applies when: '(1) the identical issue was raised in a previous proceeding;
(2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity
to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the
merits.'"  *Id.* at 288–89 (citation omitted).  Piotrowski pleaded guilty to truancy in violation of Article 65 of the New
York Education Law in his PINS proceeding.  *See* Family Court Order 1–2.  Doing so entailed admitting, contrary to
Piotrowski's position here, this Piotrowski's absences were not simply due to diabetes.  While Article 65 requires
regular attendance at school, it permits absences allowed by school rules, *see* N.Y. Educ. Law § 3210(1)(a), (2)(b),
and Piotrowski's school allowed absences due to "illness," *see* Rocky Point Handbook 7; *see also* Union Middle
School Attendance Policy, Pl.'s Ex. 33, at 2 (Dkt. #82-35).  Accordingly, whether Piotrowski's absences were caused
by diabetes appears to have been determined in Piotrowski's PINS proceeding, where Piotrowski had a full and fair
opportunity to litigate the issue, as well as essential to the judgment in that proceeding.

2020) ("Absent evidence that [a teacher] would not have taken the same actions if a non-disabled student engaged in the same conduct—which Plaintiff has not produced—[the teacher's] actions cannot be said to be due to Plaintiff's disabilities.").

Piotrowski has also failed to offer evidence from which a factfinder could infer that defendants failed to accommodate his disability by virtue of this forty-minute detention.  As an initial matter, Piotrowski has failed to put forward evidence that as a result of the detention, he "as a practical matter was denied meaningful access to services, programs or activities to which he . . . was legally entitled.'"  *Hamilton*, 3 F.4th at 91 (quotation marks omitted).  The Second Circuit has found this deficiency fatal to similar claims.  *See Tylicki v. St. Onge*, 297 F. App'x 65, 67 (2d Cir. 2008) (affirming dismissal of ADA and Rehabilitation Act claims that challenged a school suspension based on failure to accommodate, on the ground that the plaintiff "has failed to allege that he was denied access to [the school's] programs, for though he was suspended from the school, he had originally been admitted and had attended classes, and his complaint does not allege that he attempted to re-enroll but was denied admission due to his disability").

In any event, a plaintiff can prevail under the ADA and Rehabilitation Act only if he demonstrates that the denial of access to services resulted from a failure to reasonably accommodate his disability.  Piotrowski has not put forward evidence from which a reasonable factfinder could find that here.  Plaintiff himself acknowledges that he would arrive at school with enough time to go to the nurse's office to check his blood sugar before the beginning of his first class.  J.P. Dep. 76:10–13.  Piotrowski thus has not shown that Assistant Principal Gabriel failed to reasonably accommodate his disability by instructing him to go to the nurse's office upon arriving at school—rather than socializing with friends upon arrival and going to the nurse's office only once class was beginning—or by giving him a detention for violating this directive.  *See* School Defs.' Statement ¶¶ 90, 92; Gabriel Dep. at 121:5–122:6, 124:5–125:10, 128:8–129:12.

Instead of making that case, Piotrowski asserts in his briefing that the detention he received was actually based on his going to the school nurse's office later in the day—as opposed to his making a belated trip before first period.  *See* Pl.'s School Statement ¶ 90 (citing Gabriel Dep. 122); Pl.'s Opp'n 8 (citing M.P. Dep. 167–69, 171–72).  But plaintiff does not cite record materials that substantiate that claim.  *See* pp. 5–6, *supra*.  Accordingly, plaintiff has not put forward evidence from which a jury could find that defendants failed to reasonably accommodate his disability based on this forty-minute detention—let alone evidence from which a jury could find the issuance of this forty-minute detention reflected the type of intentional denial of an accommodation, or deliberate indifference, necessary to sustain his damages claim.

### 3.  One-Day In-School Suspension

The School District, Board, and County are also entitled to summary judgment on Piotrowski's ADA and Rehabilitation Act claims based on his one-day in-school suspension, because Piotrowski has not set forth evidence from which a factfinder could conclude that the suspension reflected either disparate treatment or a failure to accommodate giving rise to a damages claim under these statutes.

Piotrowski has not established a *prima facie* case of disparate treatment based his one-day suspension after a confrontation with his teacher over cell phone use in class.  He has not offered evidence that other students were permitted to use their phones in class in a manner that was prohibited for him.  Instead, Piotrowski acknowledges that while all students were permitted to use their phones for the limited purpose of listening to music while completing worksheets, his teacher instructed him to put the phone away after observing him using an application on the phone—an activity that was off-limits to the other students in the class.  *See* J.P. Dep. 87:12–90:7; *see also* Pl.'s School Statement ¶ 101.  Nor has he set forth evidence that other students were not

disciplined for failing to obey a teacher's instructions—here, directions to put his phone away, and then to leave the classroom.  *See* School Defs.' Statement ¶ 95; Suspension Letter 1.

Piotrowski has also failed to put forward evidence to support a failure-to-accommodate claim based on this one-day in-school suspension for insubordination.  As with his detention-based claim, Piotrowski has not put forward evidence that he "as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled," *Hamilton*, 3 F.4th at 91, because he was suspended, in-school, for one day, *see Tylicki*, 297 F. App'x at 67.  While a family court judge later directed Piotrowski to undergo a mental health evaluation and then to attend a 30-day intensive day-treatment program after Piotrowski received that second suspension, plaintiff has not put forward evidence from which a factfinder could find decisions of an independent judicial authority—a family court judge—were proximately caused by the School District, Board, or County.

Nor has Piotrowski put forward evidence from which a reasonable factfinder could determine that by suspending him for one day based on insubordination, defendants failed to accommodate Piotrowski's diabetes—let alone did so in a manner that was deliberately indifferent to, or intentionally violative of, his statutory rights.  Piotrowski was suspended after he defied a teacher's instruction that he put his phone away and then disobeyed her instruction to leave the classroom, departing only after administrators came to escort him away.  Piotrowski has not put forward evidence from which a reasonable finder of fact could determine that imposing penalties for flatly disobeying a teacher's instructions—without suggesting to anyone at the time that his phone use on the occasion in question was connected to a medical need—denied plaintiff a reasonable accommodation for his medical condition.  And he certainly has not put forward evidence from which a jury could find that the District, Board of Education, or County

*intentionally* violated the ADA or Rehabilitation Act by suspending plaintiff for one day based on insubordination, on a deliberate indifference theory or otherwise.

Piotrowski offers no compelling argument otherwise.  Piotrowski makes much of the fact that at some point after he was removed from class, his mother asserted to administrators that he had been using his cell phone to check his blood sugar.  But that fact does not go to the insubordination rationale for the one-day suspension—and plaintiff has never disputed defendants' assertion that he was argumentative with his teacher.

Piotrowski also contends that whether he was actually suspended based on insubordination "is a statement of opinion" or an issue as to which "there exists a genuine issue of fact to be tried." Pl.'s School Statement ¶¶ 95–96.  But plaintiff's Rule 56.1 statement cites no record evidence establishing a dispute about the reason for his suspension.  The closest Piotrowski comes is a citation in his brief to a sentence in his own deposition in which Piotrowski asserts that school officials had "said I shouldn't have took my phone out," as an explanation of why he was "insubordinate"—apparently to suggest that school officials suspended him simply for accessing his phone.  Pl.'s Opp'n 10 (citing J.P. Dep. 97).  But Piotrowski immediately made clear that his information about the basis for his suspension came from "a letter from an individual, some paper saying something about . . . the suspension."  J.P. Dep. 97:16–20.  The suspension letter, in turn, states that Piotrowski was deemed insubordinate because, after he was warned by his teacher about the cell phone use, he "stated, 'You can't give me a warning,'" and "became argumentative," before "refus[ing]" "to leave the classroom."  Suspension Letter 1.  And Piotrowski separately affirmed in a sworn declaration that he was informed that the insubordination penalty related to his response to the teacher's direction to put his phone away, rather than the mere fact that he had used his phone.  *See* J.P. Aff., Pl.'s Ex. 2, at ¶ 36 (Dkt. #82-4) (stating that school officials "stated that they suspended me for being 'insubordinate' because I objected to the teacher telling me to

put my phone away by telling her that she could not give me a warning for having it out."). Piotrowski's statements, taken in context, do not generate a material dispute of fact about whether he was suspended for disobeying his teacher's instructions.

In sum, the School District, Board, and County are entitled to summary judgment on Piotrowski's ADA and Rehabilitation Act damages claims based on a one-day in-school suspension, both because Piotrowski has not put forward facts suggesting he "as a practical matter was denied meaningful access" to school services as a result of the suspension, *Hamilton*, 3 F.4th at 91, and because he has not put forward facts suggesting that his suspension for insubordination reflected a deliberately indifferent or otherwise purposeful failure to accommodate his diabetes.

## II.   Section 1983 Claims

Defendants Moeller, Gabriel, Crossan, and Mayer are likewise entitled to summary judgment on plaintiff's claims under Section 1983 against them.

### A.   Claims against Moeller, Gabriel, and Crossan

Plaintiff's Section 1983 claims against defendants Moeller, Gabriel, and Crossan may not proceed to trial.  Plaintiff's Section 1983 theory is hard to parse: he asserts that "pursuant to 42 U.S.C. § 1983, defendants Moeller, Gabriel, and Crossan violated [his] 14th Amendment rights to equal protection under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act."  Pl.'s Opp'n 17 (capitalization altered).  And plaintiff's briefing on the matter makes clear that these Section 1983 claims concern the same instances of alleged disability-based discrimination that underlie his ADA and Rehabilitation Act claims: the truancy determination, the forty-minute detention, the one-day suspension, and more generally the District's purported failure to provide plaintiff with "reasonable and necessary accommodations" for his disability.  *Id.* at 20–22.  These claims fail for two independent reasons.

At the outset, the law in this Circuit is clear that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see J.L.*, 324 F. Supp. 3d at 467 n.4 ("There is no individual liability under the ADA or § 504 of the Rehabilitation Act."); *M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 175, 194 n.11 (D. Conn. 2008) (collecting cases for the same proposition).  And while "[t]he Second Circuit has not yet decided whether § 1983 can be used as a backstop to create individual liability under the Rehabilitation Act" or the ADA, "every court of appeals to consider this issue, as well as a majority of district courts in this Circuit, have rejected this approach and concluded § 1983 is not available to provide a remedy for alleged violations of rights under Section 504" or the ADA.  *Steele v. Success Acad. Charter Schs., Inc.*, No. 19-CV-5659 (AJN), 2020 WL 6424566, at *3 (S.D.N.Y. Nov. 1, 2020) (collecting cases from seven Courts of Appeals).  The Court finds this majority approach persuasive.  "[B]oth the Rehabilitation Act and the ADA provide extensive, comprehensive remedial frameworks that address every aspect of [a plaintiff's claim] under section 1983," so permitting a plaintiff to sue for violations of the ADA and Rehabilitation Act under Section 1983 "would be duplicative at best; in effect such a holding would provide the plaintiff with two bites at precisely the same apple."  *Id.* at *4 (quoting *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999)).  Accordingly, because both the ADA and Rehabilitation Act create "comprehensive remedial scheme[s] that permit[] disabled individuals (and their representatives) to vindicate their rights," I adopt the unanimous view of the Courts of Appeals that "plaintiff cannot bring an action under 42 U.S.C. § 1983 against a state official in her individual capacity for violations of" the ADA or Rehabilitation Act.  *Steele*, 2020 WL 6424566, at *4.

Even if Section 1983 could be used in such a fashion, however, plaintiff's claims would fail because plaintiff's claims against Moeller, Gabriel, and Crossan are all premised on the same

conduct as underlies plaintiff's claims against the School District, Board, and County.  Since plaintiff cannot show that any of those actions violated his rights under either ADA or Rehabilitation Act, *see* pp. 16–23, *supra*, defendants Moeller, Gabriel, and Crossan are entitled to summary judgment on plaintiff's Section 1983 claims predicated on violations of those two laws.

### B.  *Claims against Mayer*

Plaintiff's Section 1983 claims against defendant Mayer fail for substantially the same reasons.  Plaintiff claims that Mayer, his probation officer, was deliberately indifferent to the likelihood that, by filing the violation of probation petitions against plaintiff in 2017 and 2018, she was "violat[ing] . . . the ADA and/or Section 504 of the Rehabilitation Act."  Pl.'s Opp'n 25 (capitalization altered).  Here again plaintiff seeks to leverage Section 1983 as a workaround to the bar on individual liability under the ADA and Rehabilitation Act, and that effort fails for the same reasons just discussed, *see* p. 24, *supra*.

Even if such claims were cognizable under Section 1983, however, qualified immunity precludes a finding of liability here.  Plaintiff identifies no cases clearly establishing the principle that Mayer violated the ADA or Rehabilitation Act by filing violations of probation either (1) based on plaintiff's late arrival to a probation meeting and use of a cell phone in violation of Mayer's directive, as in the case of the 2017 VOP, or (2) based on Gabriel's report that plaintiff had received a one-day in-school suspension for insubordination and continued to be truant, as in the case of the 2018 VOP.  Most of plaintiff's arguments center around allegations that Mayer knew that plaintiff was permitted to use his phone in school to monitor his glucose levels, such that Mayer could not in good faith have filed a violation report based on plaintiff's use of a phone.  But plaintiff's IEP was not amended to permit in-school use of a phone until March of 2018, *compare* 2016 IEP 8–9, *with* 2018 IEP 9–10, four months *after* Mayer filed the 2017 VOP based in part on plaintiff's use of a phone.  And while the 2018 VOP post-dated the addition of certain

phone privileges to plaintiff's IEP, it is undisputed that the stated reason for plaintiff's one-day suspension was "insubordination" stemming from Piotrowski's repeated failure to follow his teacher's directives.   School Defs.' Statement ¶ 97; Suspension Letter 1; 2018 VOP 1.   While plaintiff's mother attests that she notified Mayer prior to her filing the 2018 VOP that plaintiff "was in fact using his cell phone for diabetes purposes" at the time of the incident giving rise to his suspension, Decl. of Meridith Piotrowski, Pl.'s Ex. 3, at ¶ 31 (Dkt. #82-5) ("M.P. Decl."), that assertion—even if Mayer credited it—would not establish that plaintiff had not engaged in insubordination.   Plaintiff identifies no clearly established law putting Mayer on notice that she would violate the ADA or Rehabilitation Act by filing a probation violation under these circumstances.   Indeed, throughout his briefing on the subject plaintiff cites no cases at all for the proposition that Mayer would not be shielded by qualified immunity for her actions relating to the 2017 and 2018 VOPs.   *See* Pl.'s Opp'n 26–28.   Accordingly, Mayer is entitled to summary judgment on plaintiff's Section 1983 claims against her.

### C.  Standalone Section 1983 Claims for Violations of the Equal Protection Clause

Finally, to the extent plaintiff seeks to press a standalone Section 1983 claim against any of these individual defendants for violations of plaintiff's rights under the Equal Protection Clause separate from any alleged violations of the ADA and Rehabilitation Act, such a claim is "so underdeveloped that the Court deems it waived."   *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 287 n.39 (S.D.N.Y. 2017).   While plaintiff's briefing contains several passing references to the Equal Protection Clause, *see* Pl.'s Opp'n 12, 17, 28, in substance his arguments proceed entirely within the framework of the ADA and Rehabilitation Act, *see, e.g.*, *id.* at 17 (arguing that defendants "violated plaintiff's 14th Amendment rights to equal protection *under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act*") (capitalization altered and emphasis added).   Additionally, the School Defendants' summary judgment motion argues

that, to the extent plaintiff asserts a "class of one" equal protection claim, he has failed to meet his burden to identify a similarly situated comparator who was not subject to discrimination. *See* School Defs.' Mot. 22 (citing *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010)). Plaintiff's opposition makes no effort to rebut this argument, and the Second Circuit has made clear that a "court may infer that claims not defended on summary judgment are abandoned." *Shalom v. Hunter Coll. of City Univ. of N.Y.*, 645 F. App'x 60, 63 (2d Cir. 2016) (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir.2014)).

## III.   NYSHRL Claims

With Piotrowski's federal claims dismissed, the Court declines to exercise supplemental jurisdiction over his one remaining state-law claim for disability discrimination in violation of the NYSHRL against all individual defendants. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" over state-law claims if it "has dismissed all claims over which it has original jurisdiction." Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). As a general matter, where "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (citation and quotation marks omitted); *see Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).

Plaintiff did not address supplemental jurisdiction in his briefing, let alone provide a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. Accordingly, I decline to exercise supplemental jurisdiction over plaintiff's claim for disability discrimination under the NYSHRL.

## IV.    Defendants' Cross-Claims for Contribution and Indemnification

The School Defendants and County Defendants filed cross-claims against each other for indemnification and/or contribution.  *See* Cnty. Defs.' Answer ¶ 169; School Defs.' Answer ¶ 171. These claims appear to rest on state law, because they do not invoke any federal source of law. *See* Cnty. Defs.' Answer ¶ 169 (specifying that indemnification and contribution are sought with respect to plaintiff's NYSHRL claim, based on "carelessness, recklessness, negligence . . . and/or breach of warranty and/or breach of contract and/or strict or statutory liability"); School Defs.' Answer ¶ 171 (invoking the same concepts without specifying the claims as to which indemnification is sought).  Such claims are "contingent on [some defendant] being liable to [the plaintiff] in the first instance."  *Junger v. Singh*, 393 F. Supp. 3d 313, 325 (W.D.N.Y. 2019) (citing *Klein v. City & Cnty. Paving Corp.*, No. 16-CV-2264 (NRB), 2018 WL 4265885, at *7 (S.D.N.Y. Sept. 5, 2018)).  Having declined to exercise supplemental jurisdiction over plaintiff's remaining claims under the NYSHRL, I decline to exercise supplemental jurisdiction over the related state-law questions of indemnification and contribution for the same reasons.  *See* p. 27, *supra.*

### CONCLUSION

For the reasons explained above, defendants' motions for summary judgment are granted as to Piotrowski's federal claims, and the Court declines to exercise supplemental jurisdiction over plaintiff's NYSHRL claim and defendants' cross-claims.  The Clerk of Court is respectfully directed to enter judgment in favor of defendants and close the case.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: March 30, 2023
Brooklyn, New York

28